IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN REESE,

          Plaintiff,

          v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Civil Action No. 14-cv-00376
ELECTRONICALLY FILED

### MEMORANDUM OPINION RE: PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 7 and 13)

**I. Introduction**

Plaintiff John Reese ("Plaintiff") brings the present action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have submitted Cross-Motions for Summary Judgment on the record developed at the administrative proceedings. After careful consideration of the Administrative Law Judge's ("ALJ") decision, the parties' memoranda, and the entire record, Plaintiff's Motion for Summary Judgment (Doc. No. 7) will be GRANTED IN PART as to Plaintiff's alternative request for remand, and DENIED IN PART as to Plaintiff's request for an immediate award of benefits. The Court will vacate the Commissioner's decision and remand for further proceedings. The Commissioner's Motion for Summary Judgment (Doc. No. 13) will be DENIED.

## II. Procedural History

Plaintiff filed an application for DIB and SSI on July 21, 2008. Both applications were initially denied. R. 13. Plaintiff was initially scheduled for a hearing before an ALJ on November 17, 2010; however, the Plaintiff failed to appear for the hearing (due to the death of his girlfriend) at which point the ALJ dismissed Plaintiff's request for a new hearing on November 18, 2010. R. 83. Plaintiff timely requested Appeal Council Review, which was granted on July 25, 2011, and Plaintiff was granted a new hearing date. R. 84. The new hearing was held before an ALJ on October 2, 2012. R. 13. After an unfavorable decision from the ALJ, Plaintiff filed a request for Review of Hearing Decision on January 3, 2014, which was subsequently denied. R. 1–4, 9. Plaintiff timely filed the instant lawsuit requesting judicial review. Plaintiff filed his Motion for Summary Judgment on July 7, 2014, and Commissioner filed her Motion for Summary Judgment on September 9, 2014. Docs. Nos. 7 and 13. These Motions are the subject of this Memorandum Opinion.

## III. The ALJ's Decision

In a decision dated November 7, 2012, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010. R. 15.

2. Plaintiff has not engaged in substantial gainful activity since April 15, 2008, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*). R. 15.

3. Plaintiff has the following severe impairments: lower back pain/sciatica; bipolar disorder; generalized anxiety order; polysubstance abuse, in remission (20 C.F.R. §§ 404.1520(c) and 416.920(c)). R. 15.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). R. 16.

5. Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except he is limited to performing only simple, routine and repetitive tasks in a stable work environment, defined as one involving few changes in the routine work setting. Further, the plaintiff can perform only jobs requiring little independent decision making, and he is able to follow a work routine with simple job instructions, while making simple work-related decisions. Additionally, the plaintiff needs to avoid large crowds and groups of people, and he can have only occasional contact with the public, co-workers and supervisors. Finally, he cannot perform any teamwork. R. 17.

6. Plaintiff is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965). R. 21.

7. Plaintiff was born on August 28, 1973, and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963). R. 22.

8. The claimant has attained a GED and is able to communicate in English (20 C.F.R. § 404.1564 and 416.964). R. 22.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the

plaintiff is "not disabled," whether or not the plaintiff has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). R. 22.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). R. 22.

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from April 5, 2008, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)). R. 23.

**IV. Standard of Review**

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503

(3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find

5

non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the Agency's decision cannot be affirmed on a ground other than that actually relied upon by the Agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the United States Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

**V. Discussion**

In support of Plaintiff's Motion for Summary Judgment, he argues that the ALJ erred by: (1) failing to give the medical opinion of Dr. Stewart, Plaintiff's treating physician from 2008 to

6

2012, controlling weight, thus resulting in an improper residual functional capacity assessment ("RFC"); and (2) mischaracterizing and ignoring portions of Plaintiff's medical records. Doc. No. 7. The Commissioner contends that Plaintiff's arguments are meritless, and that substantial evidence supports the ALJ's decision. Doc. No. 13.

### 1. The ALJ Erred By Failing to Consider All Probative Evidence When Determining Plaintiff's Residual Functional Capacity.

Plaintiff's argument is twofold. First, Plaintiff argues that the rejection of the treating physician's medical opinion was in error, as it does not constitute substantial conflicting evidence with Dr. Rattan's medical opinion, the non-examining psychologist who produced a functional assessment of the Plaintiff in September 2008. Doc. No. 7, 15. In support, Plaintiff claims that the ALJ did not provide adequate reasoning when rejecting the opinion of Dr. Stewart. *Id.* Also, Plaintiff contends that the ALJ violated the "Treating Physician Rule" by rejecting Dr. Stewart's opinion for invalid reasons and impermissibly substituting his own judgment for that of a physician. *Id.* at 21.

In Plaintiff's second argument, he contends that the ALJ's RFC determination was not supported by substantial evidence. Doc. No. 7, 23–27. The crux of Plaintiff's argument alleges that the ALJ failed to adequately consider Plaintiff's global assessment of functioning ("GAF") scores. *Id.* at 24–25. Specifically, Plaintiff contends that the ALJ failed to consider numerous instances in which he was assessed with a GAF score within the range of 35 to 45. *Id.* at 23–24. Additionally, Plaintiff asserts that the ALJ: (1) mischaracterized his non-compliance with therapy; and (2) mischaracterized the extent to which he received mental health treatment. *Id.* at 25–27.

After an extensive review of the record, the Court concludes that the ALJ's failure to address approximately nine (9) of the Plaintiff's GAF scores within the 35 to 45 range renders

the decision incomplete and therefore the Commissioner's decision is not supported by substantial evidence at this time.[1]

GAF scores "are used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults." *Irizarry v. Barnhart*, 233 F. App'x 189, 190 n.1 (3d Cir. 2007); *see* 65 Fed. Reg. 50746–01, 50764–65 (2000) (Social Security Administration Rules and Regulations). "The GAF scale, designed by the American Psychiatric Association, ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest." *West v. Astrue*, 2010 WL 1659712, at *4 (E.D. Pa. Apr. 26, 2010). Generally, a plaintiff's GAF score is not considered to have a "direct correlation to the severity requirements of the . . . mental disorder listings." 66 Fed. Reg. 50746, 50764–65 (2000). Nonetheless, the Social Security Administration's rules still note that GAF remains the scale used by mental health professionals to "assess current treatment needs and provide a prognosis." *Id.* As such, "it constitutes medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ in making a determination regarding a claimant's disability." *Pounds v. Astrue*, 772 F. Supp. 2d 713, 725 (W.D. Pa. 2011) (quoting *Colon v. Barnhart*, 424 F. Supp. 2d 805, 812 (E.D. Pa. 2006)). Notably, "a GAF score at or below 40 should be carefully considered because such a low score reflects 'a major impairment in several areas such as work, family relations, judgment, or mood.'" *Conklin v. Astrue*, 360 F. App'x 704, 707 n.2 (8th Cir. 2010) (citation omitted).

Plaintiff's mental health treatment records contain approximately nine (9) GAF scores that range from 35 to 45. Plaintiff was assessed with the following GAF scores: June 23, 2008 (GAF Score of 45); July 24, 2008 (GAF Score of 35); August 11, 2008 (GAF Score of 35);

---

[1] A GAF score of 35 denotes, "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32, 34 (4th ed. 2000).

August 25, 2008 (GAF Score of 35); January 26, 2009 (GAF Score of 45); March 3, 2009 (GAF Score of 45); March 23, 2009 (GAF Score of 48); March 30, 2009 (GAF Score of 50); March 22, 2010 (GAF Score of 45); September 30, 2010 (GAF Score of 45); December 6, 2010 (GAF Score of 45). Although the health records of the Plaintiff are replete with low scores, the ALJ mentioned only the following scores in the decision: June 2008 (GAF Score of 60); August 2008 (GAF Score of 55); March 2009 (GAF Score of 55); April 2011 (GAF Score of 55); May 2012 (GAF Score of 40).

Despite Plaintiff's numerous GAF scores of 45 or below, including three (3) GAF scores registering at 35, the ALJ did not discuss or note a score of either 35 or 45 in his discussion. Critically, the ALJ did not explain these low scores in the context of his RFC assessment. Although the ALJ recognized that the treatment records indicated that the GAF scores of Plaintiff were "highly inconsistent" from 2008 to 2012, that statement does not evidence that the ALJ considered the numerous low scores in assessing the RFC and therefore, his finding of non-disability. Courts, particularly within the Third Circuit, have consistently held that an ALJ's failure to specifically discuss low GAF scores in his determination constitutes grounds for a remand. *See, e.g.*, *Sweeney v. Comm'r of Soc. Sec.*, 847 F. Supp. 2d 797, 804–05 (W.D. Pa. 2012) (holding that substantial evidence did not support an ALJ's disability determination as a result of the ALJ's failure to discuss seven low GAF scores evidenced in the record); *Pounds*, 772 F. Supp. 2d at 726 (W.D. Pa. 2011) (remanding an ALJ's decision requiring explanation and consideration of Plaintiff's low GAF scores because ALJ had focused only on positive portions of the medical reports).

The ALJ's failure to discuss and reconcile these low scores with the RFC assessment and finding of non-disability, particularly the three (3) extremely low GAF scores of 35, precludes

9

this Court from concluding that the ALJ "seriously considered and weighed the importance of these scores . . . ." *Span v. Barnhart*, No. 02–7399, 2004 WL 1535768, at *8 (E.D. Pa. May 21, 2004); *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) (holding that remand was warranted where the ALJ failed to acknowledge probative evidence supporting a claim and gave no reason for implicitly rejecting said probative evidence).

For the reasons mentioned above, substantial evidence does not support the Commissioner's decision at this time. The failure of the ALJ to properly consider probative evidence of a series of low GAF scores necessarily compels this Court to vacate and remand for proceedings consistent with this Opinion.

**VI. Conclusion**

Accordingly, Plaintiff's Motion for Summary Judgment (Doc. No. 7) will be GRANTED as to Plaintiff's (alternative) request for a remand, and will be DENIED with respect to a request for an award for benefits. Commissioner's Motion for Summary Judgment (Doc. No. 13) will be DENIED. An appropriate Order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:     All Registered ECF Counsel and Parties